## CALHOUN v. LOUISIANA DELTA HARD-WOOD LUMBER CO., Inc., et al.

### No. 5655.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Wood & Wood, of Leesville, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, and P. S. Gaharan, Jr., of Jena, for appellees.

HAMITER, Judge.

The Louisiana Delta Hardwood Lumber Company, Inc., and its workmen's compensation insurer, the Maryland Casualty Company, are made defendants in this suit in which Joseph M. Calhoun seeks a compensation award under the Louisiana Employers' Liability Act, Act No. 20 of 1914, as amended, and the setting aside of a judicially approved compromise settlement previously consummated by the parties.

In substance, plaintiff alleges in his petition that on November 28, 1935, he sustained an umbilicus hernia while pulling a saw in the course and scope of his employment as a log scaler with the Louisiana Delta Hardwood Lumber Company, Inc., which injury has rendered him totally and permanently disabled; and that on June 2, 1936, he was induced to accept the sum of $500 cash in full acquittance of his claim for compensation and to sign and execute a purported compromise settlement agreement, all by reason of variously detailed acts of fraud and misrepresentation on the part of defendants' representatives. He prays that the compromise settlement be declared null and void and of no effect and that he be awarded compensation as for total and permanent disability, together with the penalty imposed by the compensation statute and legal interest from judicial demand, less the sum of $500 previously paid.

Tendered to the petition by defendants were pleas of prematurity, estoppel and res judicata, and exceptions of no cause and no right of action. All of these were overruled.

In their joint answer, defendants deny that plaintiff was injured while in the scope and course of his employment with the Louisiana Delta Hardwood Lumber Company, Inc., and also deny that they are or were ever liable to him for compensation. Further answering, they aver that they entered into the compromise settlement with plaintiff, pursuant to the provisions of section 17 of the Compensation Statute, as amended by Act No. 38 of 1918, in order to avoid the expense of a law suit in defending the asserted claim, and that no fraud or misrepresentation was perpetrated in the confection of said settlement.

The demands of plaintiff were rejected after a trial of the case on its merits, and he prosecuted this appeal.

The aforementioned pleas and exceptions are re-urged in this court. However, we shall not pass on them as we find from the merits that no liability exists on the part of the defendants.

The record discloses that plaintiff and certain representatives of defendants, including the latter's attorney, appeared before the judge of the Eighth District Court, Honorable F. E. Jones, on June 2, 1936, and presented for judicial approval a proposed compromise settlement of plaintiff's asserted compensation claim. The proposal was delineated in a joint petition of the interested parties to which plaintiff attested under oath that:

" * * * he is one of the petitioners in the foregoing petition; that he has read the same and that all of the allegations therein contained are true and correct and that the compromise settlement as set forth in said petition is made voluntarily and at his suggestion and that the terms of the settlement are in reasonable compliance with his claim for compensation and that he requests that the Court ratify same in accordance with law."

Included in such joint petition were the following allegations:

"Your petitioners show that the employee at this time is suffering with what has been diagnosed by physicians as 'Post operative ventral herniation', which the employee contends has impaired his ability to do manual labor, and furthermore contends that the disability with which he is suffering was brought about as a result of an accidental injury sustained by him on the 28th day of November, 1935, while he was assisting in cutting a tree in the woods of the employer in the Parish of La Salle.

"Your petitioners further show that no notice of the supposed accidental injury was reported to the employer until March 14, 1936, at which time the employee reported to Dr. D. L. Trax, physician of employer for treatment.

"Your petitioners, the employer and insurer, especially deny that any such accidental injury ever occurred and contend that the disability with which the employee is suffering at this time dates back to his service in the United States Army in 1918, which has been recognized by the Government by the fact that the said employee was operated on for hernia in a United States Veterans' Hospital at Alexandria, Louisiana, during the early part of the year 1935, which fact the employee does not deny, but on the other hand contends that a complete recovery had been effected in the treatment he received from the Veterans' Hospital, and contends that the recurrence was brought about by accidental injury received by him on the 28th day of November, 1935, as hereinabove alleged. The said employee, however, admits that the accidental injury above alleged is the only accidental injury he has ever received while in the employ of the Louisiana Delta Hardwood Lumber Company, Inc., and that no injury has been sustained since said date which aggravated or altered his condition.

"Your petitioners now show that a serious dispute has arisen between the employee, the employer and insurer as to the extent and cause of the disability, the employer and insurer contending that no accidental injury was ever received by the employee which in any way caused or aggravated his present condition, and furthermore contending that if total disability exists that it exists wholly separate and apart from any connection with employee's services with employer, and is a direct result of a pre-existing condition, and for these reasons there is no liability for compensation whatsoever.

"Petitioners further show that they have agreed that the employer and its insurer shall pay to the employee the sum of Five Hundred and no/100 ($500.00) Dollars, cash, in lump sum settlement which said amount the employee has agreed to accept in full payment and complete satisfaction for any and all claims that he has or may have for compensation as a result of the

alleged injury sustained by him while engaged as log scaler for the Louisiana Delta Hardwood Lumber Company, Inc., on the 28th day of November, 1935, or any injury sustained by him in any manner while in the employ of said Louisiana Delta Hardwood Lumber Company, Inc."

The submitted agreement was approved, ratified and confirmed by the court, and plaintiff was paid the stipulated amount. As evidence of such payment he executed on the mentioned date a written receipt and therein discharged defendants from all liability by reason of the contended accidental injury.

The allegations of the joint petition, which are above quoted, and the evidence hereinafter referred to and discussed, clearly reveal that a serious and substantial dispute existed between plaintiff and defendants at the time of the assailed settlement with reference to whether or not the injury was attributable to and obtained during the employment. By reason of that distinct and genuine disagreement, the settlement was properly and correctly confected under the authority of Section 17 of the Louisiana Employers' Liability Statute, being Act No. 20 of 1914, as amended by Act No. 38 of 1918, rather than under the provisions of Section 8, subsection 9 of said statute, as amended by Act No. 242 of 1928, which deals with lump sum settlements where there is no room for dispute on material facts surrounding the compensation claim. Musick v. Central Carbon Co., 166 La. 355, 117 So. 277; Guillot v. Louisiana Ry. & Nav. Co., 166 La. 467, 117 So. 558; Young v. Glynn, 171 La. 371, 131 So. 51; Horney v. Scott, La. App., 171 So. 172.

As the judgment in question was rendered in a competent court of this state and in a proceeding and manner authorized by the laws of Louisiana, it is presumed to be valid (Moss v. Drost, 130 La. 285, 57 So. 929), and such decree, together with the included settlement, will not be annulled and set aside unless fraud, misrepresentation or ill practice attended or entered into the attaining of its existence. Horney v. Scott, supra; Reid v. J. P. Florio & Co., La.App., 172 So. 572.

Numerous allegations of fact are made in plaintiff's petition from which fraud, sufficient to justify the annulling of the judicially sanctioned settlement, might be concluded; but the question arises, are they substantiated and supported by adequate proof? According to our appreciation of the evidence, which is in accord with that of the trial judge who saw and heard the witnesses, that question must be answered in the negative.

It is admitted by plaintiff that he sustained a hernia in the year 1918 while at Camp Pike, Arkansas, as a member of the United States Army. In 1935 he undertook work with the defendant lumber company, and during that year informed its manager of the injury which he received during his army service. Representatives of that company thereupon assisted him in entering the United States Veterans' Hospital about August or September of 1935, at Alexandria, Louisiana, where he underwent an operation. His hospitalization endured for approximately two months and thereafter he resumed his employment. It was on November 28, 1935, and while he was so employed, that the claimed accidental and a separate hernia occurred.

The joint petition for the compromise settlement was offered to plaintiff for his signature on June 2, 1936, by defendants' attorney, and was duly signed. He testifies that it was never read and explained to him; but in this he is contradicted by all other persons who were then present, there being five of them. Presentation of the executed document was thereafter made to the district judge for the necessary court action. Plaintiff personally appeared before Judge Jones who caused him to bare the injured portion of his body, and an inspection of it was made. Before the decree was signed claimant was informed by said judge, and this he admits, that all of his claims against defendants would be fully and finally discharged by the ratification of the compromise agreement.

Judge Jones was called as a witness for plaintiff, and, under cross-examination, gave the following testimony regarding the settlement and the disagreement of the parties as to the cause of the injury:

"Q. Isn't it true that you thought it a fair settlement because of the fact that there was a dispute there as to the hernia?

"A. Yes, that's why I acted. It was a question of a dispute of where the hernia originally took place.

"Q. The fact that there was a dispute as to the cause of the hernia made it a fair case for compromise?

"A. Yes, I thought it was a dispute between the parties as to where this thing originated—whether in the camp of the United States Government or not. As a rule where a man is making a satisfactory salary I wouldn't hardly compromise for $500.00 if it was an original proposition, but because it started up there at camp I thought it subject to be compromised.

"Q. I know you wouldn't approve a compromise when any fraud was being practiced and I wouldn't like to ask you that question, but I would like to ask you whether or not it came to your knowledge that there was any shadow of fraud or misrepresentation on the part of anybody connected with it?

"A. No, if there had been I would have stopped it. We were all talking about the origin of the hernia and I think there was considerable dispute as to where it happened."

Another instance of fraud and misrepresentation charged by plaintiff and asserted as being responsible for his entering into the agreement, in favor of which he testified, is that, in addition to his receiving the sum suggested by him—$500—defendants' representatives obligated themselves to secure for him proper remuneration under his service connected claim with the Federal Government. These representatives, and also the other persons present when the petition was signed, emphatically deny that any such obligation was contracted as part consideration for the settlement. They testify that he was informed only of their willingness to assist in every way possible in the prosecution of said claim, and that they exerted efforts in this regard both before and after the compromise was effected, but without avail. When asked if he remembered a promise being made to plaintiff to obtain for the latter compensation from the Federal Government, Judge Jones stated:

"No, I remember Mr. Calhoun said the Government ought to compensate him, and I remember hearing them say they would render him any assistance they could—they would render him any assistance they could. They said if they could help him in any way they would. Mr. Calhoun thought the Government should compensate him—I remember that."

The preponderance of the evidence in the case does not sustain plaintiff's multiple charges of fraud and misrepresentation on the part of defendants leading to the consummation of the herein discussed settlement. On the contrary, it weighs in favor of the conclusion that a definite, actual and real dispute existed on the question of whether or not the injury was compensable under the statute, and that the compromise was fairly and justly entered into.

Accordingly, and for the reasons assigned, the judgment is affirmed.