**EAGLIN v. SOUTHERN KRAFT CORPORATION et al.**

No. 6288.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Writ of Certiorari and Review Denied Feb. 3, 1941.

Fink & Fink, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

TALIAFERRO, Judge.

George Harris Eaglin, husband of the plaintiff, on January 25, 1938, while performing services in the course of his employment with Southern Kraft Corporation, was instantly killed. Mrs. Eaglin promptly engaged counsel to represent her in the prosecution of a claim for compensation as dependent widow of deceased. We do not know all the details of the negotiations engaged in between the parties and their respective counsel prior to February 28, 1938, but on that date the following petition with prayer for approval of the compromise settlement therein outlined was presented to the district judge, to-wit:

"The joint petition of Mrs. Louise Pearce Eaglin, a resident of the Parish of Ouachita, State of Louisiana, and of Southern Kraft Corporation, a foreign corporation domiciled in the City of New York, State of New York but doing business in the State of Louisiana with M. V. Orr, a resident of the Parish of Morehouse, State of Louisiana as its agent for service of legal process within the State of Louisiana, respectfully represents:

"I. That on January 25, 1938 and for a short time prior thereto George Harris Eaglin, formerly a resident of Ouachita Parish, Louisiana, was employed by your second named petitioner in Webster Parish, Louisiana in connection with the construction of a pulp and paper factory at Springhill in Webster Parish, at a wage of Nine and 90/100 ($9.90) per day, working six (6) days a week, or a weekly wage of Fifty-Nine and 40/100 ($59.40); That on the aforesaid date, while performing services in the course of his employment, the said Geo. Harris Eaglin was instantly killed as a result of an accident.

"II. Your petitioner, Mrs. Louise Pearce Eaglin, avers that she was married to the said Geo. Harris Eaglin in Monroe, Ouachita Parish, Louisiana on June 25, 1927, and that there were no children born of said marriage; avers further that she was totally dependent upon the said Geo. Harris Eaglin at the time of his death and that she is the lawful widow of the said Geo. Harris Eaglin. Your second named petitioner, Southern Kraft Corporation, however, denies the legality of the aforesaid marriage and that Mrs. Louise Pearce Eaglin is the lawful widow of Geo. Harris Eaglin.

"III. Your first named petitioner contends that she is entitled to compensation for the death of Geo. Harris Eaglin at the rate of thirty-two and one-half (32½%) per cent of his total weekly wage for a period of three hundred (300) weeks, whereas the Southern Kraft Corporation contends that at the most she is entitled to only Ten Dollars ($10.00) per week during her widowhood and not beyond three hundred (300) weeks. Your petitioner, Mrs. Louise Pearce Eaglin, is desirous of securing a full settlement at this time of all claims which she had, has, or might acquire arising from the death of her aforesaid husband and in view of the aforesaid disputes and the probability of the re-marriage or death of Mrs. Louise Pearce Eaglin, your petitioners have agreed upon a compromise settlement of all claims aforesaid of the said Mrs. Louise Pearce Eaglin against Southern Kraft Corporation and its insurer for the aforesaid death of Geo. Harris Eaglin for the sum of Two Thousand and no/100 ($2,000.00) Dollars cash in addition to the medical and funeral expenses heretofore paid, but that before this compromise settlement can be consummated it is necessary that the same be approved by this Honorable Court after a full consideration.

"IV. Your petitioner, Mrs. Louise Pearce Eaglin, avers that she has had all of her benefits under the Workmen's Compensation Laws of the State of Louisiana explained to her and she fully understands the same; that she has the benefit of legal counsel and desires to enter into the compromise settlement hereinabove outlined. Your petitioners aver further that they desire that the obligations and benefits of this compromise agreement extend to the compensation insurer of Southern Kraft Corporation.

"Wherefore these premises and affidavits considered your petitioners pray that the compromise settlement outlined herein be approved and made the judgment of this court; that, accordingly, petitioner Mrs. Louise Pearce Eaglin do have and recover judgment of and against petitioner Southern Kraft Corporation in the full sum of Two Thousand and No/100 ($2,000.00)

Dollars in addition to the medical and funeral expenses heretofore incurred and paid, with legal interest thereon from date of said judgment until paid, together with all costs of this proceeding.

"Pray further That upon the payment of said sum all claims of petitioner Mrs. Louise Pearce Eaglin against Southern Kraft Corporation or its insurer, arising from or in any manner connected with the aforesaid accident of January 25, 1938, and resulting death of Geo. Harris Eaglin, of every nature, character or kind, whether under the Workmen's Compensation Laws or otherwise, be released and forever discharged and that the said Mrs. Louise Pearce Eaglin be authorized to grant a full and complete release.

"Pray finally for all other needful orders, for judgment in accordance with law, and for general relief.

"Joseph S. Guerriero
        Attorney for Mrs. Louise P. Eaglin

"Theus, Grisham, Davis & Leigh
        Attorneys for Southern Kraft Corp."

Attached to this petition is the affidavit of Mrs. Eaglin in which she deposes that "she has read over the same (the joint petition), and all the facts and allegations therein set forth are true and correct." The following judgment was rendered and signed by the judge, to-wit:

"This matter having been presented to the Court on the joint petition of Mrs. Louise Pearce Eaglin and Southern Kraft Corporation, the Court being fully advised in the premises, the law and the evidence being in favor thereof:

"It is therefore ordered, adjudged, and decreed that the compromise settlement outlined in said joint petition be and the same is hereby approved and made the judgment of this Court; and accordingly, that Mrs. Louise Pearce Eaglin do have and recover judgment of and against Southern Kraft Corporation in the full sum of Two Thousand and No/100 ($2,000.00) Dollars, in addition to the medical and funeral expenses heretofore incurred and paid, with legal interest thereon from date hereof until paid, as well as all costs of these proceedings.

"It is further ordered, adjudged, and decreed that upon the payment of the aforesaid sum all claims of the said Mrs. Louise Pearce Eaglin against Southern Kraft Corporation or its insurer arising from or in any manner connected with the accident of January 25, 1938 and resulting death of Geo. Harris Eaglin, described in said joint petition, be and the same are hereby released and forever discharged and the said Mrs. Louise Pearce Eaglin is hereby authorized upon the payment of the aforesaid sum of Two Thousand and No/100 ($2,000.00) Dollars to grant a full, binding, and complete release of all claims aforesaid.

"It is finally ordered, adjudged, and decreed that the obligations and benefits of said compromise settlement extend to the compensation insurer of Southern Kraft Corporation.

"Thus done, read, and signed officially on this 28th day of February, A. D. 1938.
        "D. F. Garrett
                "Judge."

The $2,000 was promptly paid to Mrs. Eaglin. Her written receipt therefor, signed before a notary and two witnesses, is attached to the judgment. She declared therein that the amount was accepted in "full settlement, satisfaction and discharge" of the judgment.

The present suit was filed on September 23, 1939. Plaintiff therein takes the position that as the dependent widow of her deceased husband she was entitled to compensation at the rate of $20 per week for three hundred weeks, or a total of $6,000. She refers to the compromise agreement as a lump sum settlement and assails its legality on the ground that it was made at a discount in excess of eight per cent per annum in violation of the Employers' Liability Act, Act No. 20 of 1914. She sues to recover judgment for $7,000 consisting of compensation at the rate of $20 per week for three hundred weeks, plus statutory penalty of fifty per cent, authorized by subsection 9 of Sec. 8 of said act, as amended by Act No. 242 of 1928, p. 362, less the $2,000 paid her, and interest.

Contrary to the general rule in cases of this and similar character, there is no charge of fraud, ill-practice, misrepresentation, duress or coercion, as an incident or incidents to the consummation of the agreement attacked. The petition is conspicuous for the absence of any allegation impugning or reflecting upon the bona fides of defendant and its agents in the confection of the agreement.

Exceptions to the petition as disclosing neither a cause nor a right of action were sustained and the suit dismissed. From this judgment plaintiff appealed.

The agreement through which plaintiff was entitled to receive and did receive $2,000 from her husband's employer was not, strictly speaking, a lump sum settlement within the meaning of the Employers' Liability Act, although by the payment of the lump sum further pecuniary liability on the part of the employer to plaintiff was intended to be foreclosed. The agreement was denominated a compromise by the parties thereto and properly so. If it had not been so referred to, the verbiage thereof renders inescapable the conclusion ·that the parties purposely intended that it should partake of that character.

To effectuate a lump sum settlement, authorized by subsection 9 of Sec. 8 of the Employers' Liability Act, the monthly rate of compensation and its duration, absolute or conditional, must have been agreed to by the parties and approved by the court, or fixed by the court after trial. Even though the parties are in full accord as to amount of payments and the term thereof, they are without right to validly confect a lump sum settlement in the absence of judicial sanction. Such a settlement is in no sense of the word a compromise. The beneficiary gives up nothing due to or claimed by him in order to have the cash, save the discount authorized by the statute. He simply prefers, by entering into such agreement, to receive a lump sum than to have the amount due him paid in small weekly installments over, in many cases, a period of years.

The legal rules governing and decisions dealing with lump sum settlements authorized by subsection 9 of Sec. 8 of the Employers' Liability Act have no application to the instant case. This ·leaves the act of compromise unaffected by any other charge against its integrity. However, we shall further discuss and pass upon its efficacy as a complete bar to plaintiff's original rights and actions against defendants.

The Employers' Liability Act does not abridge the right of persons to compose their differences through the agency of compromise. To the contrary, it recognizes the importance of such liberty of action as is authorized and encouraged by the general laws of the state. This is definitely reflected by Sec. 17 of the act, as amended by Act No. 38 of 1918, p. 59, which reads as follows, to-wit: " * * * That the interested parties shall have the right to settle all matters of compensation between themselves. But all agreements of settlement shall be reduced to writing and shall be substantially in accord with the various provisions of this act, and shall be approved by the Court. The agreement between employer and employee or his dependent shall be presented to the . Court upon joint petition of employer and employee or his dependent, which petition must be verified by both parties. The settlement so approved shall be immediately entered as ·the judgment of the Court, *and such judgment shall have the same force and effect* and may be satisfied as other judgments of the same court."

But to effectuate a compromise there must be, as its basis, a contest, dispute or disagreement of some sort between the parties thereto. It is resorted to as a means of preventing or of putting an end to a lawsuit. The hope of gaining is balanced by the fear of losing. Civil Code, Art. 3071. The only prerequisite to the validity of an act of compromise required by the Employers' Liability Act beyond that exacted by the general law, is the approval of the judge. In all other respects such agreements are governed and controlled by general laws on the subject.

According to the allegations of the joint petition there were two issues of dispute between the parties, to-wit:

(1) The validity of the marriage between deceased and plaintiff.

(2) Was she entitled to the maximum of $20 per week compensation or to one-half of that amount for said period, if entitled to anything?

Plaintiff, of course, took the affirmative of the first proposition and contended for the maximum rate and period of compensation. Defendants assumed the negative of both propositions. Obviously a serious dispute existed. There was no impediment to either party exercising freely the right conferred by law to adjust and settle for all time the differences between them, and this they did. Such differences, it is clear, could well be made the subject of compromise between persons competent to contract.

It is apropos to here state that at the time of the signing of the papers necessary to

adjust said differences, plaintiff was in full possession of her mental faculty and was aided and advised by counsel of her own selection.

"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion." Civil Code, Art. 3078.

There was involved in Young v. Glynn, 171 La. 371, 131 So. 51, 52, the validity of a compromise of a claim for workmen's compensation. The agreement was upheld. The court, inter alia, said: "For it is of the nature of a compromise that it cannot be attacked on the ground of lesion, that is to say, for failure to receive all that one may be entitled to. Rev.Civ.Code, arts. 3078, 1860. In other words, in every compromise the hope of gaining is always balanced by the danger of losing. Rev. Civ.Code, art. 3071."

■ If plaintiff's marriage to the deceased was valid, or, if invalid, and she enjoyed the status of putative widow, she was entitled to compensation for three hundred weeks, the total of which, under either contention as to amount of weekly payments, would be materially in excess of $2,000; but, regardless of the prudence or imprudence of acting as she did, her rights against the defendant and the issues between them have passed into the realm of things adjudged; if the compromise was legally confected. Massey et ux. v. W. R. Pickering Lumber Company, 136 La. 688, 67 So. 552; Sellwood et al. v. Phillips et al., 185 La. 1045, 1048, 171 So. 440.

■ Subsequent developments revealing errors of law on the part of either or both contractants and/or acceptance of less than was really due, are in themselves impotent to disturb the status of relations fixed, in good faith, by the parties. It is highly important that this be true. If it were not so, compromises would be more often than not, idle gestures.

In the recent case of Self v. Wyatt Lumber Company, Inc., La.App., 189 So. 327, 329, and Horney v. Scott, La.App., 171 So. 172, this court considered and passed on attacks against the validity of acts of compromise between employer and employee, and the fundamental differences between lump sum settlements, strictly speaking, and settlements for a lump sum through compromise, were dealt with at length. In the Self case, we said: "Two classes of lump sum settlements of compensation claims are provided for in the Louisiana Employer's Liability Act. The provisions of subsection 9 of section 8 of the statute, Act No. 242 of 1928, p. 362, are applicable where there is no room for dispute between the employer and employee regarding any material facts connected with or surrounding the compensation claim. If, however, substantial and genuine disagreement exists between the parties relative thereto, a lump sum settlement by way of compromise is authorized by section 17, Act No. 38 of 1918, p. 59."

An array of cases supporting this statement is referred to.

Appellant largely relies upon McHenry v. Wall et al., La.App., 157 So. 632, decided by this court. The case is not controlling nor analogous. There, the allegations disclosed that the alleged widow was settled with for a very small amount in cash on the third day after her husband's death when in deep sorrow over his passing and without the benefit of legal advice. In addition, fraud, misrepresentations and ill practices were assigned as reasons for the annulment of the compromise. The agreement in that case was not a lump sum settlement under subsection 9 of Sec. 8 of the Employers' Liability Act.

As stated previously, the petition contains no charge of fraud, ill practice etc., in the confection of the act of compromise. Counsel for plaintiff argues that there was no real dispute to compromise because the marriage was valid and of record in the Parish of Ouachita, Louisiana. In effect, it is said that a dispute was manufactured by someone to serve as a basis for the compromise.

We have decided not to finally close the door to plaintiff if she was imposed upon or made the subject of fraud or ill practice.

Therefore, for the reasons assigned, the judgment appealed from, in so far as it sustains the exception of no cause of action, is affirmed, but is reversed, annulled and set aside in so far as it sustains the exception of no right of action.

Plaintiff is cast for costs.